Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3432 | **DATE** | 10/30/2002 |
| **CASE TITLE** | Tate vs. Showboat Marina | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' Motion for Partial Reconsideration is granted in part and denied in part. The Court's October 7, 2002 Order is hereby amended to note that Plaintiffs named in the First Amended Complaint do not need to file a signed consents to join the lawsuit under 19 U.S.C. § 216(b). Pursuant to 19 U.S.C. § 256, however, each Plaintiff -- including the named Plaintiffs -- must file a signed consent in order to mark the commencement of each individual Plaintiff's action for purposes of statute of limitations. In addition, Defendants' Motion to Dismiss is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 31 2002 date docketed | |
| ✓ | Docketing to mail notices. | CV docketing deputy initials | 68 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| | TH✓ courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GLEN TATE, et al., )
)
      Plaintiffs, ) No. 02 C 3432
)
v. ) Honorable Amy J. St. Eve
)
SHOWBOAT MARINA CASINO )
PARTNERSHIP, et al., )
)
      Defendants. )

DOCKETED
OCT 3 1 2002

## MEMORANDUM OPINION AND ORDER

Plaintiffs have moved for partial reconsideration of this Court's October 7, 2002 Order granting in part Defendants' motion to strike purported consents to join the lawsuit. In addition, Defendants Showboat Marina Casino Partnership and Harrah's Operating Company have moved to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Plaintiffs' Motion for Partial Reconsideration is granted in part and denied in part, and Defendants' Motion to Dismiss is denied.

## BACKGROUND

Plaintiffs have sued defendants in a representative action to recover alleged unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Specifically, Plaintiffs allege that Defendants Showboat Marina Casino Partnership ("SMCP"), Harrah's Operating Company ("HOC"), Riverboat Services, Inc. ("RSI"), and Robert Heitmeier failed to pay overtime to certain employees in the Marine Department of the casino boat the *M/V*

1



*Win Star.* (R. 1-1, Compl. ¶ 4.)[1] Glen Tate was the sole name plaintiff in the Complaint, which was filed on May 13, 2002. The Complaint alleged, however, that the suit had been "brought as a representative action, pursuant to 29 U.S.C. § 216(b), on behalf of the plaintiff and other employees similarly situated." (*Id.* ¶ 3.)

On May 20, 2002, Plaintiffs filed the First Amended Complaint on behalf of Glen Tate and seventeen other name plaintiffs. (R. 2-1, First Am. Compl.) The First Amended Complaint dropped any express reference to a potential representative action. Instead, the First Amended Complaint was apparently styled as a multi-party joint action under Federal Rule Civil Procedure 20. (*See* R. 52-1, Pls.' Mot. for Recons. at 2.) Notably, the First Amended Complaint acknowledged that its allegations extended beyond the named Plaintiffs, alleging that "plaintiffs, ***and other members of the Marine Department***, worked more than 40 hours in certain work weeks for which they were willfully not compensated overtime wages . . . ." (R. 2-1, First Am. Compl. ¶ 5) (emphasis added).

Just days after filing the First Amended Complaint, Plaintiffs' counsel, Ernest T. Rossiello & Associates, filed the first of several purported individual consents to join the lawsuit. (*See* R. 3-1, Consent of Octavio Martinez to Joint Suit) (filed May 22, 2002). In addition, Plaintiffs' counsel filed a purported mass consent to join the lawsuit on behalf of some twenty-nine different plaintiffs, including some individuals who had been named as plaintiffs in the First Amended Complaint and others who had signed purported individual consents filed by Plaintiffs' counsel. (*See* R. 20-1, Consents to Join Suit) (filed August 15, 2002).

Plaintiffs filed a motion for leave to file a Second Amended Complaint on September 9,

---

[1] Neither RSI nor Mr. Heitmeier has answered or otherwise appeared as yet.

2

2002. The Second Amended Complaint was filed on behalf of Glen Tate and twenty-eight other named plaintiffs. The Second Amended Complaint alleged that the suit had been "brought as a collective action by the named plaintiffs on behalf of themselves and all other employees similarly situated . . . ." (R. 26-1, Second Am. Compl. ¶ 3.) Thus, the Second Amended Complaint added back language expressly referring to a potential representative action under 29 U.S.C. § 216(b).[2] Plaintiffs' counsel continued to file purported consents to join the lawsuit while the motion for leave to file the Second Amended Complaint was pending. (*See, e.g.*, R. 29-1, Consent of Robert Soto to Join Suit (filed on September 11, 2002).) That motion was ultimately granted by this Court on September 12, 2002.[3] Since then, Plaintiffs' counsel has continued to file purported consents to join the lawsuit. (*See, e.g.*, R. 42-1, Consent of Greg Hendrix to Join Suit) (filed on October 8, 2002).

Defendants filed a Motion to Strike certain purported consents to join the lawsuit on September 23, 2002. Specifically, Defendants argued that the purported mass consent form listing the names of twenty-nine persons who had consented to join the lawsuit was improper.[4] Defendants argued that under the FLSA each of these Proposed Plaintiffs were required to sign and file an individual consent form. (*See* R. 33-1, Defs.' Mot. to Strike Consents, at 2.) On

---

[2] The Second Amended Complaint differed from previous versions of the complaint in other ways. These other differences, however, are not relevant here.

[3] The action was transferred from Judge Moran to this Court pursuant to the Executive Committee's Order mass reassignment order dated August 30, 2002.

[4] The individuals who were listed in the mass consent form and who were the target of Defendants' Motion to Strike included Glen Tate, Kurt Meyer, Carol Meyer, Melinda Gonzalez, John Torres, William Torres, Dennis Ballor, Tyrone Glover, Bonnie Kramer, Dwyen Ringbauer, Diane Rosenfeldt, Paul Johnson, Kelly Moore, Nicholas Galmiche, Robert Reilly, Loretta Kornacki, John Benjamin, Michael Irk, and Beverly Cleary (collectively, the "Proposed Plaintiffs").

3

September 30, 2002, at the hearing on Defendants' Motion to Strike, Plaintiffs argued that the purported mass consent form was proper and that individual consent forms were not required under the FLSA. Significantly, Plaintiffs never suggested that the lawsuit had ever been anything other than a representative action. On October 7, 2002, this Court denied Defendants' Motion to Strike with respect to Glen Tate and Beverly Cleary and granted the motion with respect to the remaining Proposed Plaintiffs. *See Tate v. Showboat Marina Casino P'ship*, No. 02 C 3432, 2002 WL 31253843 (N.D. Ill. Oct. 8, 2002). Now, Plaintiffs have filed a motion for partial reconsideration of the Court's October 7 Order striking those consents.

## I. PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION.

As the party seeking reconsideration, Plaintiffs bear a heavy burden. The Seventh Circuit has repeatedly cautioned that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker-Davis Publ's, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F.Supp. 261, 267 (N.D. Ill. 1992) ("motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."). Accordingly, a court will entertain a motion for reconsideration only where the moving party can establish that the law or facts have changed significantly since the issue was presented, or the court has "patently misunderstood a party," has "made a decision outside the adversarial issues presented," or has "made an error not of reasoning, but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990). Whether to grant reconsideration is committed to the sound discretion of the court. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

4

## A. Multi-Party Joint Action or Representative Action.

Plaintiffs argue that the Court's October 7 order striking certain consents was erroneous because individual signed consents were not required for the Proposed Plaintiffs. Specifically, Plaintiffs contend that the consent form requirement does not apply because when the Proposed Plaintiffs joined the lawsuit it was styled as a multi-party joint action under Federal Rule of Civil Procedure 20 rather than a representative action under Section 216(b). Thus, Plaintiffs submit, individual consent forms were not required at all for the Proposed Plaintiffs, each of whom was named in the First Amended Complaint.[5]

The requirements for a representative or collective action under the FLSA are set forth in 29 U.S.C. § 216(b). Section 216(b) provides:

> An action to recover the liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The statute mandates that an individual must "opt in" to a representative action by (1) giving written consent and (2) filing that consent with the court. *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 441 (N.D. Ill. 1982). Thus, unless an employee opts in, he does not become part of the action. *Id.*

As Plaintiffs point out, however, a plaintiff pursuing an individual action under the FLSA

---

[5] Although Plaintiffs make this argument for the first time here, Plaintiffs contend that reconsideration is appropriate because they did not have the opportunity to respond in writing to Defendants' Motion to Strike. Further, Plaintiffs suggest that the Court failed to appreciate that the Proposed Plaintiffs had been named plaintiffs beginning with the First Amended Complaint. Plaintiffs did not raise either point during the September 30, 2002 hearing on Defendants' Motion to Strike.

5

need not file a consent to join the lawsuit because the written consent requirement on its face applies only to representative actions. This is true even in a multi-plaintiff joint action under Rule 20. *See Bonilla v. Las Vegas Cigar Co.*, 61 F.Supp.2d 1129, 1133 (D. Nev. 1999) ("By contradistinction, a suit which consists of a number of individual actions joined under Rule 20(a) of the Federal Rules of Civil Procedure is not a 'collective action,' and plaintiffs need not file a consent to suit in order to commence the action."); *see also Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir. 1978) ("As this is not a representative suit, there was no need for plaintiffs to have filed 'consent(s) in writing.'"); *Deley v. Atlantic Box & Lumber Corp.*, 119 F.Supp. 727, 728 (D.N.J. 1954) ("Obviously, therefore, these provisions requiring the filing of written consents were intended to apply to suits brought by one employee in behalf of others similarly situated who were unnamed, and whose several causes of action were not set forth. By the same token, such additional requirements were totally unnecessary as to named plaintiffs' whose separate causes of action were pleaded -- as here.").

Thus, the question is whether this lawsuit was a multi-party joint action under Rule 20 or a representative action under Section 216(b) during the period when the First Amended Complaint controlled. In effect, Plaintiffs contend that this lawsuit was (1) filed as a representative action; (2) then converted into a multi-party joint action; and (3) ultimately converted back into a representative action (but with multiple named plaintiffs). In support of this assertion, they point to the fact that the First Amended Complaint dropped any express reference to a representative action under Section 216(b). (*See* R. 1-1, Compl. at ¶ 3 (Complaint "brought as a representative action, pursuant to 29 U.S.C. § 216(b), on behalf of the plaintiff and other employees similarly situated.").) Further, Plaintiffs cite their Motion to File Second Amended Complaint, which explained that they were "expanding the scope of the original

6

complaint to allege a representative or 'spurious class action,' as authorized by the Fair Labor Standards Act of 1938 ['FLSA'], 29 U.S.C. 216(b)." (*See* R. 26-1, Pls.' Mot. to File Second Am. Compl. at 1.)

Contrary to Plaintiffs' suggestion, however, this case was never simply a multi-party joint action; this lawsuit has always had a representative action component. Significantly, Plaintiffs' counsel continued to file purported consents to join the lawsuit (including the purported mass consent challenged by Defendants' Motion to Strike) throughout the period that the First Amended Complaint controlled. *Cf. Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1135 (5th Cir. 1984) (suggesting that the filing of consents to join the lawsuit are more significant than the language of the complaint when determining whether a lawsuit involves a representative action). Such purported consents to join the lawsuit would be meaningless unless the case involved a representative action. Moreover, the language of the First Amended Complaint is ambiguous on the representative action issue. Although it does not make express reference to a possible representative action, the First Amended Complaint cites Section 216(b) and alleges that "plaintiffs, ***and other members of the Marine Department***, worked more than 40 hours in certain work weeks for which they were willfully not compensated overtime wages . . . " (R. 2-1, First Am. Compl. ¶ 5 (emphasis added).)

Plaintiffs offer no explanation why it would ever make sense to add, drop, and then add back a representative action component to the lawsuit. It is possible that Plaintiffs adopted this approach to avoid filing separate signed consents on behalf of the named plaintiffs added with the First Amended Complaint. But Plaintiffs admit that the action is now a representative action and, as discussed below, under Section 256 of the FLSA individual consents are required in representative actions -- even for those Plaintiffs named in the complaint.

7

### B. The Need for Individual Consents for Each of the Name Plaintiffs in a Representative Action.

Plaintiffs suggest that even if this lawsuit is a representative action, the Proposed Plaintiffs still need not file individual signed consents because each was named in the First Amended Complaint. In support of this proposition, Plaintiffs cite this Court's October 7 order wherein the Court noted that the named plaintiff "need not file a separate signed consent to join the lawsuit that he himself filed." *Tate v. Showboat Marina Casino Partnership*, No. 02 C 3432, 2002 WL 31253843, at *1 (N.D. Ill. Oct. 8, 2002) (emphasis added) (*citing Gordon v. Trace Ambulance*, No. 00 C 7912, 2001 WL 587854, at *1 (N.D.Ill. Feb. 23, 2001)). Plaintiffs argue that since this Court ruled named Plaintiff Glen Tate was not required to file a signed consent to join his own lawsuit, the other named Plaintiffs should not be required to do so either.

Plaintiffs' Motion for Partial Reconsideration has prompted this Court to re-examine the need for consents in a representative action under the FLSA. Section 216(b) provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). The question Plaintiffs have raised is whether the signed consent requirement applies only to unnamed plaintiffs seeking to join the lawsuit or to all plaintiffs, including those already named in the complaint.

The courts have split on the issue whether plaintiffs named in the lawsuit need to file separate signed consents to join the lawsuit. Several courts have suggested that requiring named plaintiffs to file a signed consent to join the lawsuit would be redundant. *See, e.g., Allen*, 724 F.2d at 1135 ("We conclude that parties named in a suit, who have hired a lawyer to file a complaint on their behalf, have clearly indicated their consent to suit. [Section 216] does not

require additional time-and-resource-consuming filings."); *Schwertfeger v. Village of Sauk Village*, No. 99 C 6456, 2000 WL 224746, at *1 (N.D. Ill. Feb. 23, 2000) ("[T]he plaintiff who filed this suit, did not file a consent, but he was not required to do so."); *Gordon*, 2001 WL 587854, at *1 ("Section 16(b), however, requires that individuals ***not named in the complaint*** file written consent forms to become party plaintiffs.") (emphasis added). Other courts, have held that the requirement for individual signed consents to joint the lawsuit applies even to named plaintiffs. *See, e.g., Harkins v. Riverboat Servs., Inc.*, No. 99 C 123, slip. op. at 4 (N.D. Ill. May 17, 2002) ("Until the plaintiff has filed the statutorily-mandated written consent, the plaintiff has not joined the collective action, ***even if the plaintiff is named in the complaint***.") (emphasis added).

The source of the split in authority on this issue may lie with the dual purpose of the signed consent requirement under the FLSA. One purpose behind the signed consent requirement is to ensure adequate notice to an employer of exactly who is joining a lawsuit against it. *See Allen*, 724 F.2d at 1134 ("The clear intent . . . was to make the members of the class of unnamed plaintiffs who wished to participate in, and be bound by, the action identify themselves for the benefit of the defendant."); *Deley*, 119 F.Supp. at 728 ("The object of these provisions therefore clearly was to make these uncertain plaintiffs certain, and actual participants, so that defendants could know the parties and the charges with which they were to be faced."). But with respect to plaintiffs already named in the lawsuit, filing separate consents obviously would not afford any further notice to an employer. Thus, as this Court suggested, it would seem anomalous to require a named plaintiff to file a signed consent simply "to *join* the lawsuit that he himself filed." *Tate*, 2002 WL 31253843, at *1 (emphasis added).

9

The other purpose served by the signed consent requirement is to mark the commencement of the action for purposes of the statute of limitations. This purpose is embodied in Section 256, which provides that:

> [I]n the case of a collective or class action instituted under the Fair Labor Standards Act of 1938 . . . it shall be considered to be commenced in the case of any individual claimant --
>
> (a) on the date when the complaint is filed, *if he is specifically named as a party plaintiff in the complaint <u>and</u> his written consent to become a party plaintiff is filed on such date* in the court in which the action is brought; or
>
> (b) *if such written consent was not so filed* or if his name did not so appear -- *on the subsequent date on which such written consent is filed* in the court in which the action was commenced.

29 U.S.C. § 256 (emphasis added). The language of Section 256 is clear: in a representative action, a plaintiff's case is deemed to have commenced only when his or her own signed consent has been filed. *See Schwertfeger*, 2000 WL 224746, at *1 n.1 ("late filing [of named plaintiffs signed consent] affects the commencement date of his suit"); *Gordon*, 2001 WL 587854, at *1 n.1 ("plaintiff may be able to amend her complaint by filing the required written consent forms before the statute of limitations runs."); *see also Salazar v. Brown*, No. G87-961, 1996 WL 302673, at *10 (W.D. Mich. Apr. 9, 1996) ("The statute makes clear that the filing of a consent may come after the filing of the complaint, but a collection action is not commenced for purposes of the statute of limitations until both the complaint and the claimant's individual written consent are filed."); *SonguMbriwa v. Davis Mem'l Goodwill Indus.*, 144 F.R.D. 1, 2 (D.D.C. 1992) ("Until a plaintiff, even a named plaintiff, has filed a written consent, she has not joined in the class action, at least for statute of limitations purposes."). Thus, regardless whether signed consents are necessary for named plaintiffs to *join* a representative action, Section 256

makes clear that even for named plaintiffs signed consents are required to mark the commencement of the action.

Plaintiffs suggest that, notwithstanding the plain language of Section 256, individual signed consents should not be required for each of the Proposed Plaintiffs because this action was a multi-party joint action under Rule 20 before it was converted into a representative action under Section 216. As discussed above, Plaintiffs' argument mischaracterizes the true nature of this lawsuit, which has always had a representative action component. But even if Plaintiffs are correct that this case was at one time simply a multi-party joint action, Plaintiffs offer no convincing argument for escaping the plain language of Section 256, which mandates signed consents for even named plaintiffs in a representative action in order to mark the commencement of the action.

Accordingly, this Court grants Plaintiffs' Motion for Partial Reconsideration in part and denies it in part. The Court's October 7 Order is amended to note that Plaintiffs named in First Amended Complaint do not need to file signed consents in order to join the lawsuit under Section 216(b). Pursuant to Section 256, however, each Plaintiff -- including the named Plaintiffs -- must file a signed consent in order to mark the commencement of each individual Plaintiff's action for purposes of the statute of limitations.

## II. DEFENDANTS' MOTION TO DISMISS.

Defendants have moved to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs fall within one of the statutory exceptions to the FLSA and that certain of Plaintiffs' claims are also barred by the two- or three-year statute of limitations under the FLSA.

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). When considering a motion to dismiss, the Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts entitling him or her to relief. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993).

### A. The Statutory Exception for "Seamen" Under the FLSA.

Defendants argue, first, that Plaintiffs cannot recover for any alleged unpaid overtime because the overtime provisions of the FLSA do not apply to seamen. Specifically, Defendants cite Section 213(b)(6), which notes that "The [maximum hour] provisions of section 207 of this title shall not apply with respect to . . . any employee employed as a seamen." 29 U.S.C. § 213(b)(6). *See also* 29 C.F.R. § 783.31 ("an employee will ordinarily be regarded as 'employed as a seaman' if he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character. This is true with respect to vessels navigating inland waters as well as ocean-going and coastal vessels.").

Defendants argue that Plaintiffs cannot recover for any alleged unpaid overtime because they are "seamen" within the meaning of Section 213(b)(6) and Section 783.31 of the Code of Federal Regulations. Further, Defendants complain that the Plaintiffs have not specifically alleged that the Plaintiffs' work was not "rendered primarily as an aid in the operation of [a]

12

vessel as a means of transportation" and that Plaintiffs have not described any non-maritime duties or responsibilities. Thus, Defendants suggest that Plaintiffs have failed to plead around the statutory exemption for seamen under the FLSA.

Plaintiffs' Second Amended Complaint alleges, however, that "[d]uring the year 1988, the United States Department of Labor, Wage and Hour Division, [USDOL], conducted an audit and investigation of defendants to determine compliance the Act. USDOL found that the Act had been, and was being, violated in that the *Marine Department did not qualify for the 'seamen' exemption* of the Act, 29 U.S.C. 213(b)(6)." (*See* R. 26-1, Second Am. Compl. ¶ 6 ) (emphasis added).[6] Accepting all facts alleged by Plaintiffs in the Second Amended Complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to Plaintiffs -- as this Court must do in the context of a motion to dismiss -- Plaintiffs have alleged that the statutory exemption for seamen under the FLSA does not apply here. Thus, Plaintiffs have stated a valid claim for alleged unpaid overtime under the FLSA, and Defendants' Motion to Dismiss must be denied.

### B. The Statute of Limitations Issue.

Defendants also argue that certain of Plaintiffs' claims for alleged unpaid overtime are barred by the applicable statute of limitations. Specifically, Defendants argue that Plaintiffs' claims for unpaid overtime prior to 1999 must be denied because the FLSA has a three year statute of limitations for alleged willful violations. 29 U.S.C. § 255(a).

---

[6] Defendants argue that the Department of Labor's investigation did not actually apply to Showboat Marina Casino Partnership or Harrah's Operating Company but rather to Riverboat Services, Inc. Plaintiffs allege, however, that the investigation applied to both Defendants. The records from the Department of Labor attached as exhibits to the Second Amended Complaint are ambiguous.

13

Plaintiffs argue, however, that the FLSA's statute of limitations should be equitably tolled in this case because the Defendants concealed information concerning the FLSA violation:

> As a result of [the U.S. Department of Labor] not being able to notify the affected employees of their accrued back overtime, and the concealment by defendants of the audit from employees, as well as fear of reprisals from the defendants, the plaintiffs and those employees similarly situated were never able to collect their back wages due under 29 U.S.C. 216(b); and, by reason of such conduct, the defendants should be equitably estopped from asserting the three year statute of limitations insofar as those 121 employees, potential class members, are concerned.

(R. 26-1, Second Am. Compl. ¶ 8.)

Given Plaintiffs' allegation that the Defendants concealed the existence of the Department of Labor's investigation, this Court cannot conclude at this stage that Plaintiffs are unable to invoke the doctrines of equitable tolling and/or equitable estoppel. Thus, this Court cannot conclude that Plaintiffs' claims are barred by the statute of limitations. Accordingly, Defendants' Motion to Dismiss is denied.

## CONCLUSION

Plaintiffs' Motion for Partial Reconsideration is granted in part and denied in part. The Court's October 7, 2002 Order is hereby amended to note that Plaintiffs named in the First Amended Complaint do not need to file a signed consents to join the lawsuit under 19 U.S.C. § 216(b). Pursuant to 19 U.S.C. § 256, however, each Plaintiff -- including the named

Plaintiffs -- must file a signed consent in order to mark the commencement of each individual Plaintiff's action for purposes of the statute of limitations. In addition, Defendants' Motion to Dismiss is denied.

Dated: October 30, 2002

AMY J. ST. EVE
U.S. District Court Judge