CERTIFIED COPY

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1681

GLENN TATE, et al.,

                                                                                *Plaintiffs-Appellants*,

v.

SHOWBOAT MARINA CASINO PARTNERSHIP, et al.,

                                                                *Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 3432—Amy J. St. Eve, *Judge*.

ARGUED OCTOBER 24, 2005—DECIDED DECEMBER 13, 2005

FILED
JAN 04 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. This case is a sequel to *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099 (7th Cir. 2004), decided a year ago, where, affirming a jury's verdict, we held that the members of the operating crew of a gambling boat that is most of the time moored rather than sailing are nevertheless "seamen" within the meaning of the provision of the Fair Labor Standards Act that exempts seamen from the Act's overtime provisions. FLSA § 13(b)(6), 29 U.S.C. § 213(b)(6). Noting that the plaintiffs were classified as seamen for purposes of the special

benefits to which the Jones Act and the admiralty doctrine of maintenance and cure entitle persons so classified (a classification that confers benefits that they would be very reluctant to give up), we said that "when persons employed on a ship, even so atypical a one as an Indiana gambling boat [that most of the time is moored rather than sailing], are classified as seamen for purposes of entitlement to the special employment benefits to which seamen, including therefore these plaintiffs, are entitled, a presumption arises that they are seamen under the FLSA as well." 385 F.3d at 1103. We added that "the presumption could probably be rebutted in a case in which a person employed on a ship was engaged in activities that had no maritime tincture whatever; an example would be a waiter employed on a cruise ship to serve meals to the passengers at regular hours." *Id.* But the presumption was not rebutted, "because none of the plaintiffs is a croupier, cashier, bouncer, dealer, waiter, or entertainer; all are (or so the jury could reasonably find) members of the ship's operating crew." *Id.* "A blackjack dealer does not become a seaman by virtue of leaving his job at Harrah's land-based casino and taking a job at Harrah's riverboat casino, but likewise a helmsman does not cease to be a seaman because he transfers to a casino boat that spends most of its time moored. It was for the jury to decide whether the three plaintiffs whose overtime claims survived to trial were more like the helmsman than like the blackjack dealer." *Id.* at 1104.

The present case is materially identical to *Harkins*. It involves the same boat, the same job titles (with trivial variances that the plaintiffs do not try to make an issue of), an overlapping time period, the same plaintiffs' lawyer. The defendants are different—they are successors to the

defendants in *Harkins*—but the only *material* difference between the two cases is the identity of the plaintiffs; because they are different people from the plaintiffs in *Harkins*, their suit is not barred, as a matter of res judicata or collateral estoppel, by the judgment in that case. But what about stare decisis? The lawyer contends that the *Harkins* decision is distinguishable because there his clients lost after a trial and here they lost on summary judgment. That is a distinction without legal significance. The facts in the two cases are the same and the plaintiffs in *Harkins* lost because, on those facts, the jury correctly found, they had no claim. All the plaintiffs in this case, like those in *Harkins*, are members of the operating crew. None is a waiter, etc.—that is, none is an ordinary casino worker who happens to be doing his normal work on a floating platform rather than on one resting on terra firma.

The plaintiffs call the statements in *Harkins* that we quoted merely "dicta"—that is, things the court said, not what it held; and only what a court holds is binding (within the limits of stare decisis, discussed below) in subsequent cases. But what does "dictum" (the singular of "dicta," the two words being used interchangeably by most opinion writers these days) mean exactly? There are two principal contenders. The first—that dictum is anything besides the facts and the outcome—is unacceptable; as a practical matter, it would erase stare decisis because two cases rarely have identical facts. Michael Dorf, "Dicta and Article III," 142 *U. Pa. L. Rev.* 1997, 2035-37, 2067 (1994). But *Harkins* and this case do have identical facts; so even if "dictum" were construed so broadly, these plaintiffs would be out of luck.

The sensible alternative interpretation is that the holding of a case includes, besides the facts and the outcome, the reasoning essential to that outcome. Henry J. Friendly, "In Praise of *Erie*—and of the New Federal Common Law," 39 *N.Y.U.L. Rev.* 383, 385-86 (1964) ("a court's stated and, on its view, necessary basis for deciding does not become dictum because a critic would have decided on another basis"). We reasoned in *Harkins* that the jury's verdict should be upheld not because it was a reasonable resolution of contested facts or a reasonable application of the governing legal standard to the facts, but because the facts found by the jury, and in this case established with equal firmness in summary judgment proceedings, showed that the plaintiffs, because they were part of the boat's operating crew and in fact engaged in maritime-related activities, were, as a matter of law, seamen within the meaning of the FLSA. That was our holding, and we must follow it unless given a good reason to overrule it.

The plaintiffs' lawyer asks us to overrule *Harkins* because, he contends, it was decided incorrectly. But if the fact that a court considers one of its previous decisions to be incorrect is a sufficient ground for overruling it, then stare decisis is out the window, because no doctrine of deference to precedent is needed to induce a court to follow the precedents that it agrees with; a court has no incentive to overrule them even if it is completely free to do so. The doctrine of stare decisis "imparts authority to a decision, depending on the court that rendered it, merely by virtue of the authority of the rendering court and independently of the quality of its reasoning. The essence of stare decisis is that the mere existence of certain decisions becomes a reason for adhering to their holdings in subsequent cases." *Midlock v. Apple Vacations West, Inc.*, 406

F.3d 453, 457 (7th Cir. 2005) (citations omitted). It is not a conclusive reason; the Supreme Court has specified considerations that a court should weigh in deciding whether to follow or to overrule a previous decision. "[W]hen this Court reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case. Thus, for example, we may ask whether the rule has proven to be intolerable simply in defying practical workability; whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation; whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; or whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 854-55 (1992) (citations omitted); see also *Payne v. Tennessee*, 501 U.S. 808, 827-28 (1991); *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403 (1970).

The only effort the plaintiffs' lawyer has made to fit his plea for overruling to the Court's criteria is to argue that *Harkins* is inconsistent with a prior decision by this court, *Howard v. Southern Illinois Riverboat Casino Cruises, Inc.*, 364 F.3d 854 (7th Cir. 2004). And yes, when two decisions are inconsistent, one of them should give way. But there is no inconsistency.

*Howard* was a Jones Act case, not an FLSA case. The issue was whether a gambling boat that the law of Illinois

required to be permanently moored was a "vessel in navigation," for if it was not, then under the Supreme Court's decision in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 373 (1995), no one working on the boat was a seaman within the meaning of the Jones Act. We held that a permanently moored gambling boat is not a vessel in navigation. In the present case as in *Harkins*, neither of which involves a boat that is permanently moored, the plaintiffs are *conceded* to be seamen within the meaning of the Jones Act. At all times relevant to this case, Indiana law, unlike Illinois law in *Howard*, *forbade* gambling boats to be permanently moored. When in August 2002 Indiana abrogated the prohibition, our defendants permanently moored their boat and they and the plaintiffs' union then agreed to modify their collective bargaining agreement so that the plaintiffs would be paid time and a half for overtime, consistent with the FLSA. Whether this modification represented a tacit acknowledgment that employees working on a permanently moored boat are not seamen within the meaning of the FLSA (and thus not exempt from the Act's overtime requirements), and if so whether such an acknowledgment would be a correct interpretation of the Act, is not an issue in this case; and there is no hint in *Howard* that the court thought that it was deciding the status *under the FLSA* of the operating crew of a gambling boat that is permanently moored, let alone of a boat that is not.

It could be argued that what is important is not whether a boat sails, but whether it floats, for if it floats it needs a crew to perform distinctively maritime work in order to prevent the boat from deteriorating and even sinking. Cf. *Stewart v. Dutra Construction Co.*, 125 S. Ct. 1118 (2005). The plaintiffs' lawyer conceded at argument that

the members of the crew of a houseboat are seamen within the meaning of the Fair Labor Standards Act, even though most houseboats are permanently moored, like mobile homes. Nothing in *Chandris* or *Howard* forecloses such an argument. They were, to repeat, cases under the Jones Act rather than the FLSA. The Jones Act provides a generous tort remedy for injuries to seamen, in recognition, as the Court noted in *Chandris*, 515 U.S. at 368, of the hazards of sea duty. Those hazards are minimal when the boat on which the "seaman" works is permanently moored to the land, and so it was understandable that the members of the crews of such boats would not be considered seamen for *Jones Act* purposes. The overtime provisions of the FLSA have nothing to do with the hazardousness of sea duty. The pertinent fact is rather that seamen do not work an ordinary 40-hour week. That is not because a boat will often be at sea more than 40 hours a week, but because it usually is impractical to use shifts and thus avoid overtime—a ship that is at sea for a week cannot change crews every few hours. Of course, the less extended a ship's voyages, the less significant this consideration is, "yet it would be odd to think that the crew of a ferry or a tugboat or a sightseeing boat contains no seamen because such boats don't go on overnight voyages." *Harkins v. Riverboat Services, Inc.*, supra, 385 F.3d at 1103. We concluded that a gambling boat that is not permanently moored should be assimilated to these examples. And, to repeat, the plaintiffs in this case as in *Harkins* are conceded to be seamen for Jones Act purposes.

We are mindful that the actual motive for the seamen exemption from the FLSA seems to have been unrelated to the practical consideration just discussed: the seamen themselves didn't want to be covered, because under

previous law their minimum wages were set by the Maritime Commission under the Merchant Marine Act of 1936 and they were content with that and didn't want to take their chances with the new regime established by the FLSA and administered by the Secretary of Labor. Joint Hearings before S. Comm. on Education and Labor and H. Comm. on Labor on S. 2475 and H.R. 7200, 75th Cong., 1st Sess. 545-47, 549, 1216, 1217 (1937); *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, 419 F.3d 47, 54-55 (1st Cir. 2005). The exemption from the FLSA's minimum-wage provisions was repealed in 1961 but the overtime provisions were retained and the question is why; the only reason that occurs to us (we have been unable to find any relevant legislative history) is the difference in working conditions between maritime and landside labor.

But we are straying from the basic point, which is that because *Howard* is readily distinguishable from *Harkins* (and the present case), it provides no basis for our overruling *Harkins*. The only other basis on which the plaintiffs' lawyer urges overruling is that *Harkins* was, he thinks, decided incorrectly. That, as we have explained, is not reason enough. We add that he didn't think enough of the argument to seek either panel rehearing or rehearing en banc in *Harkins*, even though an unacknowledged conflict between two of our decisions would be an appropriate occasion for a rehearing. Not that there is a conflict; but the present appeal, argued by the same lawyer, claims there is.

AFFIRMED.

No. 05-1681                                                        9

A true Copy:

Teste:

_____
Clerk of the United States Court of
Appeals for the Seventh Circuit